UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **STREETLIFE INTERNATIONAL GMBH,**<br><br>**Plaintiff,**<br><br>v.<br><br>**KOFI DEGRAFT-JOHNSON,**<br>*also known as* KOFI DEGRAFT,<br>*also known as* DEGRAFT JOHNSON,<br>*also known as* BANGOR**.**<br><br>**Defendant.** | **Civil Action No. 24-7344 (SDW)**<br><br>**OPINION AND ORDER** |

**CLARK, Magistrate Judge**

    **THIS MATTER** comes before the Court on two motions by Plaintiff Streetlife International GmbH ("Plaintiff"): first, a Motion for Alternative Service on Defendant Kofi Degraft-Johnson ("Defendant") [Dkt. No. 8][1]; and second, a Motion for Extension of Time to Effect Service [Dkt. No. 12]. Plaintiff's counsel, Patrick C. English, Esq., filed a Declaration in Support of Plaintiff's Motion for Alternative Service (the "English Decl."). *See* Dkt. No. 9. The Court has carefully considered the relevant submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion for alternative service [Dkt. No. 8] is **DENIED without prejudice**, and Plaintiff's motion for an extension of time to serve Defendant [Dkt. No. 12] is **GRANTED**.

---

[1] Plaintiff's motion was filed as a "Motion for Service by Publication." *See* Dkt. No. 8. However, the Court presumes Plaintiff's motion is for substituted service rather than service by publication, as Plaintiff seeks to serve Defendant via email. *Id.* at 1; English Decl. at 3.

1

I. **BACKGROUND**

On June 28, 2024, Plaintiff filed this action against Defendant, asserting claims for breach of contract (Count One), unjust enrichment (Count Two), intentional fraudulent misrepresentation and forgery (Count Three), and conversion (Count Four). Dkt. No. 1 ("Compl."). On or around April 24, 2024, Plaintiff, a concert promoter based in Germany, entered into a contract with Defendant, who promised to produce Snoop Dogg, a famous American musical artist, for a music festival in Bratislavia, Slovakia occurring on August 15, 2024 (the "Festival"). Compl. ¶¶ 7-9; *see also* Ex. A, Dkt. No. 9 at 16-20. Defendant purported to serve as a talent agent for the music management company, "Boss Lady Entertainment," which was founded by Snoop Dogg's wife, Shante Broadus. *Id.* ¶¶ 8-9. In exchange for Snoop Dogg's performance at the Festival, Plaintiff was to pay a performance fee of $965,000, with $241,250 due upon execution of the contract. *Id.* ¶ 10. The remainder was to be paid in installments. *Id.* Plaintiff paid the first installment of $241,250 but became suspicious when it did not receive any of the materials Defendant promised it under the contract. *Id.* ¶¶ 11-12. Thereafter, Plaintiff conduct an "investigat[ion]" and concluded it had been duped. *Id.* ¶¶ 12-13. Plaintiff demanded return of the funds paid to Defendant, but was ignored. *Id.* ¶¶ 14, 22.

After conducting additional research, Plaintiff determined that Defendant had engaged in a series of earlier frauds. *Id.* ¶ 15. Specifically, Plaintiff references *ALV Events Int'l. v. Johnson*, 821 F. Supp. 2d 489 (D. Conn. 2010), and asserts that in or around 2008, "[Defendant] made false representations regarding [his] relationship with Justin Timberlake and promised to produce him for a music promoter." *Id.*; *see* Ex. B, Dkt. No. 9 at 22-25. In *ALV Events Int'l*, the court granted in part ALV Events International's motion for default judgment against defendant Kofi Degraft Johnson in the amount of $1,165,274.04. 821 F. Supp. 2d at 498. Plaintiff also determined that

Defendant engaged in similar "criminal conduct" in New Jersey and that Defendant plead guilty for such conduct before this Court in March of 2011. *Id.* ¶ 16; *see* Ex. C, Dkt. No. 9 at 27-28.

Since July of 2024, Plaintiff has attempted to serve Defendant to no avail. English Decl. ¶¶ 4-5. On or around July 3, 2024, Plaintiff hired a third-party process server to effect service upon Defendant. *Id.* ¶ 6. Plaintiff provided its process server with two Connecticut addresses it believed were associated with Defendant. *Id.* ¶ 6; *see* Dkt. No. 9 at 30-31. One address was listed as Defendant's business address and "turned out to be an empty lot." *Id.* The second address was Defendant's purported residence, but Defendant had recently moved from there. *Id.* After failing to serve Defendant at those two addresses, Plaintiff provided its process server with a third possible address for Defendant. *Id.* Defendant, however, had moved from there as well. *Id.*; *see* Dkt. No. 9 at 32. Plaintiff subsequently retained a private detective agency to "track down" Defendant. *Id.* ¶ 7. Plaintiff's investigator believed Defendant resided at 15 East Putnam Avenue, Apartment 130, Greenwich, Connecticut, 06830. *Id.* ¶ 7. That address was a personal mailbox at a UPS store, and UPS was unable to provide further information on the owner of the mailbox. *Id.* ¶ 8; *see* Dkt. No. 9 at 33.

Plaintiff now moves to serve Defendant through an alternative method of service, requesting that it be permitted to serve Defendant via email at the email addresses used by Defendant to communicate with them regarding Snoop Dogg's performance at the Festival, namely "banger@leviathanartists.com and kdegraft@hotmail.com." *Id.* ¶ 11; *see* Pl.'s Moving Br. at 1, 3, Dkt. No. 10. Plaintiff also claims it communicated a demand letter to those email addresses and did not receive a "bounce-back" message. *Id.*

## II.  DISCUSSION

### A.  Alternative Service

Pursuant to Federal Rule of Civil Procedure 4(e):

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>>
>> (2) doing any of the following:
>>
>>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>>
>>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>>
>>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Under New Jersey law, the primary method for effectuating service is personal service. *See* N.J. Ct. R. 4:4-4(a), 4:4-5(a). New Jersey Court Rules, however, allow for substitute or constructive service when personal service cannot be effected. *See* N.J. Ct. R. 4:4-4(b), 4:4-5. "For *in personam jurisdiction*, New Jersey Court Rule 4:4-4(b) provides the methods of substitute or constructive service, such as personal service outside the state, simultaneous mailings by ordinary and certified (or registered) mail, and 'as provided by court order, consistent with due process of law.'" *H.D. Smith, LLC v. Prime Rite Corp.*, No. 16-294, 2016 WL 3606785, at *1 (D.N.J. July 5, 2016) (citations omitted). "For *in rem* and *quasi in rem jurisdiction*, New Jersey Court Rule 4:4-5 provides the methods for personal, substitute, and constructive service, such as service by

publication." *Id.* (citations omitted). "Regardless of the type of action, substitute or constructive service requires a demonstration of due diligence that satisfies the requirements specified in New Jersey Court Rule 4:4-5(b)." *Id.* (citations omitted).

"Diligence has no fixed standard." *H.D. Smith, LLC*, 2016 WL 3606785, at *2 (citing *Modan v. Modan*, 327 N.J. Super. 44, 48 (App. Div. 2000)). "The diligence exercised and the alternative service requested must meet the constitutional requirements of due process." *Id.* (citation omitted). "Namely, the 'elementary and fundamental requirement of due process' is that there be 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (citations omitted). When considering due diligence, the court measures "the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant." *Modan*, 327 N.J. Super. at 48 (citations and quotations omitted). "Diligence requires that a plaintiff follow up on information it possesses or can reasonably obtain, but it does not necessarily mean a plaintiff take every conceivable action." *H.D. Smith, LLC*, 2016 WL 3606785, at *2 (citation omitted).

Courts in the Third Circuit have authorized service by email where "the movant has 'supplied the [c]ourt with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address.'" *See U.S. Sec. and Exch. Comm'n v. Vuuzle Media Corp.*, No. 21-1226, 2021 WL 1731947, at *3 (D.N.J. May 3, 2021) (citations omitted) (finding due process prong satisfied where movant supplied recent communications, financial records, and press releases as evidence of defendant's repeated and current usage of the suggested email address). This Court has also accepted email as a sufficient means of service where the plaintiff demonstrates direct communication with the defendant at the relevant address. *See*

5

*Vaswani, Inc. v. Manjunathamurthy*, No. 20-20288, 2021 WL 1541071 at *2 (D.N.J. Apr. 19, 2021).

### B. Due Diligence

As a threshold matter, Plaintiff has not demonstrated due diligence in attempting to serve Defendant. A review of the Declaration of Patrick C. English, Esq. shows that although Plaintiff sought the assistance of a third-party process server to personally serve Defendant in accordance with N.J. Ct. R. 4:4-4(a), Plaintiff has not otherwise explained its efforts to locate and serve Defendant. It appears that Plaintiff has not conducted a nationwide database search to identify an address for Defendant. It also appears that Plaintiff did not hire a third-party process server to conduct a due diligence inquiry. *See generally* English Decl. Moreover, Plaintiff has not explained what efforts and fieldwork, if any, its retained detective agency made to locate and serve Defendant. *Id.* ¶ 7. For example, how Plaintiff's investigator came to suggest that a UPS Store mailbox in Greenwich, Connecticut was Defendant's residential address is not clear. *Id.* ¶¶ 7-8. Plaintiff's insufficient diligence precludes the Court from granting its request to effectuate service upon Defendant via email. Therefore, Plaintiff's motion for alternative service [Dkt. No. 8] is **DENIED without prejudice**.[2]

---

[2] Although the Court denies Plaintiff's motion for alternative service solely on due diligence grounds, it cautions that due process concerns would arguably provide a further basis for denial of Plaintiff's motion. Despite Plaintiff's claim that service upon Defendant via email is warranted, Plaintiff has failed to present evidence verifying the connection between the suggested email addresses and Defendant. The Court encourages Plaintiff to include its communications with Defendant's alleged email addresses in any future motions for alternative service, and if feasible, other supporting exhibits. *See Vaswani, Inc.*, 2021 WL 1541071 at *3 (denying in part plaintiff's motion for alternative service where plaintiff provided "neither an official or otherwise reliable source" that the email address in question was "[defendant's] email address, nor any proof that [defendant] actively uses it").

### C. Extension of Time to Serve

Plaintiff also requests that the Court extend the time to serve Defendant "for a period of 10 days following the Court's ruling on the pending Motion . . . [.]" Dkt. Nos. 12-2 at 5, 12-3. Federal Rule of Civil Procedure 4(m) prescribes that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff —must dismiss the action without prejudice against that defendant or order that service be made within a specified time." However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

In determining whether to extend the time for service, the Court makes a two-step inquiry. *See Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997). First, the Court "determines whether good cause exists for a plaintiff's failure to effect timely service. If good cause exists, the extension must be granted." *Id.* (citations omitted). However, "[i]f good cause does not exist, the district court must consider whether to grant a discretionary extension of time . . . ." *Id.* For the first step of the inquiry, examining whether good cause exists, the Court focuses primarily on the plaintiff's noncompliance with the time limit for effecting service. *Id.* (citations omitted). Good cause exists where a plaintiff demonstrates "some reasonable basis for noncompliance with the time specified in the rules.'" *H.D. Smith, LLC*, 2016 WL 3606785, at *3 (D.N.J. July 5, 2016) (citations omitted).

Here, the Court finds that good cause exists to enlarge the time to serve Defendant. Although the Court found that Plaintiff has not sufficiently demonstrated due diligence in its attempts to locate and serve Defendant, Plaintiff attempted to serve Defendant on four separate occasions since the Complaint was filed in June of 2024, each time through a third-party process server. *See* Dkt. No. 9 at 30-33. Plaintiff was slightly delayed in its efforts to serve Defendant because its third-party process server, Guaranteed Subpoena, mistakenly sent Plaintiff a notice that

7

Defendant was served with the Summons. English Decl. ¶ 6. As soon as Plaintiff discovered Guaranteed Subpoena's error, Plaintiff renewed its efforts to serve Defendant. *Id.* Furthermore, the Court acknowledges that effectuating service upon Defendant may prove difficult because "[D]efendant's business is exclusively digital in nature." Pl.'s Moving Br. at 4. In addition, Plaintiff asserts that Defendant engaged in a virtually identical scheme in Connecticut, and in similar fraudulent activity in this jurisdiction. *See* Exs. B, C. Hence, it is not inconceivable that Defendant may attempt to evade service. *Id.* Therefore, Plaintiff has acted in good faith and in an expeditious manner in attempting to effectuate service on Defendant, and good cause exists to grant Plaintiff an extension of time for service. Accordingly, Plaintiff's motion for an extension of time to serve Defendant [Dkt. No. 12] is **GRANTED** and Plaintiff shall have until **April 8, 2025** to serve Defendant.

### III.    CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this **8th** day of **January, 2025**,

**ORDERED** that Plaintiff's Motion for Alternative Service [Dkt. No. 8] is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiff's Motion for Extension of Time to Serve Defendant [Dkt. No. 12] is **GRANTED**; and it is further

**ORDERED** that Plaintiff's time to effect service upon Defendant is hereby extended to **April 8, 2025**.

                                                                 s/ James B. Clark, III
                                                         **JAMES B. CLARK, III**
                                                         **United States Magistrate Judge**